1    Austin P. Nagel, SBN 118247
2    Kirsten Martinez, SBN 310674
    Bonial & Associates, P.C.
3    3160 Crow Canyon Place, Suite 215
    San Ramon, California 94583
4    Telephone: (213) 863-6010
    Fax: (213) 863-6065
5    Austin.Nagel@BonialPC.com
6    Kirsten.Martinez@BonialPC.com

7    Attorney for Secured Creditor Banc of America Funding
8    Corporation 2007-C, U.S. Bank National Association, as
    Trustee as serviced by Specialized Loan Servicing LLC

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No. 23-30746 |
| Carl Harold Ernst Jr., | Chapter 13 |
| | **OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN** |
| | <u>341(a) Meeting</u>:<br>Date: January 4, 2024<br>Time: 2:00 p.m.<br>Place: Tele/Video Conference |
| | <u>Confirmation Hearing</u>:<br>Date: Trustee's pending list<br>Time: Trustee's pending list<br>Place: Tele/Videoconference |
| Debtor. | |

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT JUDGE, THE DEBTOR, DEBTOR'S COUNSEL, THE TRUSTEE, AND OTHER INTERESTED PARTIES:**

Banc of America Funding Corporation 2007-C, U.S. Bank National Association, as Trustee as serviced by Specialized Loan Servicing LLC ("Secured Creditor"), hereby objects to the confirmation of the Debtor's Chapter 13 Plan in the above-captioned matter. Secured Creditor is a party in interest as the holder of a secured claim and therefore has standing to object to the Debtor's Chapter 13 Plan.

Case: 23-30746    Doc# 24    Filed: 12/28/23    Entered: 12/28/23 15:16:09    Page 1 of 59

Secured Creditor objects to the Debtor's Chapter 13 Plan on the following grounds:

1. **Secured Creditor's claim relating to the Property.** On or about November 22, 2023, Secured Creditor filed its Proof of Claim in the amount of $956,180.73, including arrearage in the amount of $137,483.73. Secured Creditor's claim is secured by the real property commonly known as 865 Vermont Street, San Francisco, California 94107 (the "Property"). A true and correct copy of Secured Creditor's Proof of Claim is attached as Exhibit A.

2. **Pursuant to 11 U.S.C. § 1322(b)(5), the Plan fails to provide for Secured Creditor's claim**. Secured Creditor objects to Debtors' Chapter 13 Plan in that Debtor has failed to include this obligation in his Chapter 13 Plan, excluding Secured Creditor from repayment and severely prejudicing Secured Creditor's position hereunder, as well as the security interest it maintains in the property. As mandated by 11 U.S.C. § 1325, et seq., Secured Creditor's secured collateral must provide for the pre-petition arrears in the amount of $137,483.73, which was due and owing on Debtor's account with Secured Creditor at the time of the Debtor's filing of the above-captioned case. Secured Creditor believes that if it is forced to accept Debtor's Plan as is presently proposed, Secured Creditor will be prejudiced by its position thereunder and Secured Creditor will continue to suffer substantial, mounting losses.

3. Secured Creditor further objects to Debtor's Plan in that once Debtor's obligation to Secured Creditor has been properly scheduled for repayment hereunder, Debtor cannot feasibly complete the Plan as proposed. As such, pursuant to the laws which govern the administration of this proceeding, this Chapter 13 Plan, as proposed, should not, and cannot, be confirmed.

4. **Pursuant to 11 U.S.C. §1325(a)(6), the Plan fails to provide how Debtor will be able to make all payments under the Plan and to comply with the Plan.** According to the plan, Debtor will make monthly payments of $0.00 for 0 months to the Trustee for a base plan amount of $0.00. However, according to the Debtor's Schedules, Debtor has a monthly net income of only $0.00. This amount will be insufficient to fund the plan once the arrears on Secured Creditor's claim, an additional $137,483.73, is fully provided for. Secured Creditor has satisfied its grounds for objection under 11 U.S.C. §1325(a)(6).

//

//

Case: 23-30746   Doc# 24   Filed: 12/28/23   Entered: 12/28/23 15:16:09   Page 2 of 59

## CONCLUSION

Any Chapter 13 Plan proposed by Debtor must provide for Secured Creditor's claim and eliminate the Objections specified above in order to be reasonable and to comply with applicable provisions of the Bankruptcy Code. It is respectfully requested that confirmation of the Debtor's proposed Chapter 13 Plan be denied.

WHEREFORE, Secured Creditor respectfully requests that:

1. Confirmation of Debtor's Chapter 13 Plan be denied; or, in the alternative,

2. Debtor's Plan be amended in accordance with this Objection.

3. For other such relief as the Court deems just and proper.

Dated: December 28, 2023                          Respectfully Submitted,
                                                  Bonial & Associates, P.C.

                                    By:     _/s/ Kirsten Martinez_
                                            Austin P Nagel
                                            Kirsten Martinez
                                            Attorney for Secured Creditor

EXHIBIT A

**Fill in this information to identify the case:**

Debtor 1    Carl Harold Ernst Jr.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Northern    District of    California
                                                   (State)

Case number    23-30746

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

| | | |
|---|---|---|
| 1. | **Who is the current creditor?** | Banc of America Funding Corporation 2007-C, U.S. Bank National Association, as Trustee<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor    C/O Specialized Loan Servicing LLC |
| 2. | **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |
| 3. | **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Specialized Loan Servicing LLC<br>Name<br><br>6200 S. Quebec Street, Suite 300<br>Number    Street<br><br>Greenwood Village, Colorado 80111<br>City            State          ZIP Code<br><br>Contact phone    (800) 315-4757<br><br>Contact email<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one): |
| | | **Where should payments to the creditor be sent?** (if different)<br><br>Specialized Loan Servicing LLC<br>Name<br><br>6200 S. Quebec Street, Suite 300<br>Number    Street<br><br>Greenwood Village, Colorado 80111<br>City            State          ZIP Code<br><br>Contact phone<br><br>Contact email |
| 4. | **Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known)             Filed on             <br>                                                     MM / DD / YYYY |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? |

| | | |
|---|---|---|
| 6. | **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 3691 |

7. **How much is the claim?**  $956,180.73 .  **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**  Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

9. **Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of Property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: 865 Vermont Street, San Francisco, California  94107

**Basis for Perfection:** Recordation of Lien

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $

**Amount of the claim that is secured:** $956,180.73

**Amount of the claim that is unsecured:** $ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $137,483.73

**Annual Interest Rate** (when case was filed) 3.625000%

☑ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property:

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|---|
| | | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C.§ 507(a)(7). | $ _____ |
| | | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |
| | | * Amounts are subject to adjustment on 04/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    11/20/2023
                 MM / DD / YYYY

/s/ Natalie E. Lea
     Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Natalie E. Lea | | |
| | First name | Middle name | Last name |
| Title | Authorized Agent for Specialized Loan Servicing LLC | | |
| Company | Bonial & Associates, P.C. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | P.O. Box 9013 | | |
| | Number      Street | | |
| | Addison | Texas | 75001 |
| | City | State | ZIP Code |
| Contact phone | (972) 643-6600 | Email | POCInquiries@BonialPC.com |

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

| | |
|---|---|
| Case number: | 23-30746 |
| Debtor 1: | Carl Harold Ernst Jr. |
| Debtor 2: | |
| Last 4 digits to identify: | 3691 |
| Creditor: | Banc of America Funding Corporation 2007-C, U.S. Bank National Association, as Trustee |
| Servicer: | Specialized Loan Servicing LLC |
| Fixed accrual/daily simple interest/other: | Fixed |

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $849,630.18 |
| Interest due: | $83,350.96 |
| Fees, costs due: | $4,487.96 |
| Escrow deficiency for funds advanced: | $18,711.63 |
| Less total funds on hand: | - $0.00 |
| Total debt: | $956,180.73 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | $108,310.08 |
| Prepetition fees due: | $4,487.96 |
| Escrow deficiency for funds advanced: | $18,711.63 |
| Projected escrow shortage: | $5,974.06 |
| Less funds on hand: | - $0.00 |
| Total prepetition arrearage: | $137,483.73 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | $3,384.69 |
| Monthly escrow: | $746.75 |
| Private mortgage insurance: | |
| Total monthly payment: | $4,131.44 |

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Starting Balance | | $0.00 | | | | | | | | | | |
| 01/01/2021 | $4,390.53 | | | Regular Payment Due | 01/01/2021 | $4,390.53 | | | | | | $851,420.49 | $0.00 | $2,561.69 | $0.00 | $15.00 |
| 01/21/2021 | $5.00 | $5.00 | | Payment Applied | 01/01/2021 | $4,390.53 | | | $5.00 | | | $851,420.49 | $0.00 | $2,561.69 | $0.00 | $15.00 |
| 02/01/2021 | $4,390.53 | | | Regular Payment Due | 01/01/2021 | $8,781.06 | | | | | | $851,420.49 | $0.00 | $2,566.69 | $0.00 | $15.00 |
| | | | | $169.23 Late Fee | 01/01/2021 | $8,781.06 | | | | | | $851,420.49 | $0.00 | $2,566.69 | $169.23 | $15.00 |
| 02/21/2021 | | $4,390.53 | | Payment Applied | 02/01/2021 | $4,390.53 | $812.69 | $2,572.00 | $1,005.84 | | | $850,607.80 | $0.00 | $2,566.69 | $169.23 | $15.00 |
| 03/01/2021 | $3,384.69 | | | Regular Payment Due | 02/01/2021 | $7,775.22 | | | | | | $850,607.80 | $0.00 | $3,592.53 | $169.23 | $15.00 |
| 03/19/2021 | | | $4,426.23 | Escrow Disbursement: County Tax | 02/01/2021 | $7,775.22 | | | | | | $850,607.80 | $0.00 | ($833.70) | $169.23 | $15.00 |
| 04/01/2021 | $3,384.69 | | | Regular Payment Due | 02/01/2021 | $11,159.91 | | | | | | $850,607.80 | $0.00 | ($833.70) | $169.23 | $15.00 |
| 05/01/2021 | $3,384.69 | | | Regular Payment Due | 02/01/2021 | $14,544.60 | | | | | | $850,607.80 | $0.00 | ($833.70) | $169.23 | $15.00 |

Case: 23-30746   Doc# 21   Filed: 12/28/23   Entered: 12/28/23 15:16:09   Page 8 of 59

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 23-30746

Debtor 1: Carl Harold Ernst Jr.

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/01/21 | $3,384.69 | | | Regular Payment Due | 02/01/2021 | $17,929.29 | | | | | | $850,607.80 | $0.00 | ($633.70) | $169.23 | $15.00 |
| 07/01/21 | $3,384.69 | | | Regular Payment Due | 02/01/2021 | $21,313.98 | | | | | | $850,607.80 | $0.00 | ($633.70) | $169.23 | $15.00 |
| 07/02/21 | | | $15.00 | Inspection Fee | 02/01/2021 | $21,313.98 | | | | $15.00 | | $850,607.80 | $0.00 | ($633.70) | $184.23 | $15.00 |
| 07/02/21 | | $153.00 | | Payment Received | 02/01/2021 | $21,313.98 | | | | | $153.00 | $850,607.80 | $0.00 | ($633.70) | $169.23 | $0.00 |
| 08/01/21 | $3,384.69 | | | Regular Payment Due | 02/01/2021 | $24,698.67 | | | | | | $850,607.80 | $0.00 | ($633.70) | $169.23 | $153.00 |
| 08/01/21 | | $4,000.00 | | Payment Received | 02/01/2021 | $24,698.67 | | | | | $4,000.00 | $850,607.80 | $0.00 | ($633.70) | $169.23 | $153.00 |
| 08/01/21 | | | | Payment Applied | 02/01/2021 | $20,308.14 | $815.15 | $2,569.54 | $1,005.84 | | ($4,390.53) | $850,607.80 | $0.00 | $172.14 | $169.23 | $153.00 |
| 09/01/21 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $23,692.83 | | | | | | $849,792.65 | $0.00 | $172.14 | $169.23 | $4,553.00 |
| 10/01/21 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $27,077.52 | | | | | | $849,792.65 | $0.00 | $172.14 | $169.23 | $162.47 |
| 11/01/21 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $30,462.21 | | | | | | $849,792.65 | $0.00 | $172.14 | $169.23 | $162.47 |
| 11/20/21 | | | $4,968.01 | Escrow Disbursement: County Tax | 03/01/2021 | $30,462.21 | | | | | | $849,792.65 | $0.00 | ($4,795.87) | $169.23 | $162.47 |
| 12/01/21 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $33,846.90 | | | | | | $849,792.65 | $0.00 | ($4,795.87) | $169.23 | $162.47 |
| 12/13/21 | $13.31 | $13.31 | | Interest on Escrow | 03/01/2021 | $33,846.90 | | | $13.31 | | | $849,792.65 | $0.00 | ($4,782.56) | $169.23 | $162.47 |
| 01/01/22 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $37,231.59 | | | | | | $849,792.65 | $0.00 | ($4,782.56) | $169.23 | $162.47 |
| 02/01/22 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $40,616.28 | | | | | | $849,792.65 | $0.00 | ($4,782.56) | $169.23 | $162.47 |
| 03/01/22 | | | $15.00 | Inspection Fee | 03/01/2021 | $40,616.28 | | | | $15.00 | | $849,792.65 | $0.00 | ($4,782.56) | $184.23 | $162.47 |
| 03/01/22 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $44,000.97 | | | | | | $849,792.65 | $0.00 | ($4,782.56) | $184.23 | $162.47 |
| 03/22/22 | $162.47 | $162.47 | | Principal Applied | 03/01/2021 | $44,000.97 | $162.47 | | | | ($162.47) | $849,630.18 | $0.00 | ($4,782.56) | $184.23 | $0.00 |
| 04/01/22 | | | $15.00 | Inspection Fee | 03/01/2021 | $44,000.97 | | | | $15.00 | | $849,630.18 | $0.00 | ($4,782.56) | $199.23 | $0.00 |
| 04/01/22 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $47,385.66 | | | | | | $849,630.18 | $0.00 | ($4,782.56) | $199.23 | $0.00 |
| 05/01/22 | | | $4,968.01 | Escrow Disbursement: County Tax | 03/01/2021 | $47,385.66 | | | | | | $849,630.18 | $0.00 | ($9,750.57) | $199.23 | $0.00 |
| 05/22/22 | | | $15.00 | Inspection Fee | 03/01/2021 | $47,385.66 | | | | $15.00 | | $849,630.18 | $0.00 | ($9,750.57) | $214.23 | $0.00 |
| 06/01/22 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $50,770.35 | | | | | | $849,630.18 | $0.00 | ($9,750.57) | $214.23 | $0.00 |
| 06/01/22 | | | $15.00 | Inspection Fee | 03/01/2021 | $50,770.35 | | | | $15.00 | | $849,630.18 | $0.00 | ($9,750.57) | $229.23 | $0.00 |
| 06/01/22 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $54,155.04 | | | | | | $849,630.18 | $0.00 | ($9,750.57) | $229.23 | $0.00 |
| 06/01/22 | | | $15.00 | Inspection Fee | 03/01/2021 | $54,155.04 | | | | $15.00 | | $849,630.18 | $0.00 | ($9,750.57) | $244.23 | $0.00 |
| 06/01/22 | | | $1,043.00 | Title Cost | 03/01/2021 | $54,155.04 | | | | | | $849,630.18 | $0.00 | ($9,750.57) | $1,287.23 | $0.00 |

Case: 23-30746  Doc# 24  Filed: 12/28/23  Entered: 12/28/23 15:16:09  Page 9 of 59

Case 23-30746  Claim 2-1  Filed 11/22/23  Desc Main Document  Page 5 of 53

# Mortgage Proof of Claim Attachment: Additional Page

Case number: ___23-30746___

Debtor 1: ___Carl Harold Ernst Jr.___

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Account Activity | | How Funds Were Applied / Amount Incurred | | | Balance After Amount Received or incurred | | | |
| 06/26/22 | | | $1.13 | Certified Mail/Copies Cost | 03/01/2021 | $54,155.04 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $1,286.36 | $0.00 |
| 06/26/22 | | | $1,170.00 | Foreclosure Attorney Fee | 03/01/2021 | $54,155.04 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $2,458.36 | $0.00 |
| 06/26/2022 | | | $25.00 | Payoff Statement Fee | 03/01/2021 | $54,155.04 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $2,483.36 | $0.00 |
| 06/26/22 | | | $8.71 | Certified Mail/Copies Cost | 03/01/2021 | $54,155.04 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $2,492.07 | $0.00 |
| 06/26/22 | | | $360.00 | Foreclosure Attorney Fee | 03/01/2021 | $54,155.04 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $2,852.07 | $0.00 |
| 06/26/22 | | | $92.00 | Recording Cost | 03/01/2021 | $54,155.04 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $2,944.07 | $0.00 |
| 06/26/2022 | | | $98.00 | Recording Cost | 03/01/2021 | $54,155.04 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,042.07 | $0.00 |
| 07/01/2022 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $57,539.73 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,042.07 | $0.00 |
| 07/07/2022 | | | ($15.00) | Inspection Fee Adjustment | 03/01/2021 | $57,539.73 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,027.07 | $0.00 |
| 07/07/2022 | | | $15.00 | Inspection Fee | 03/01/2021 | $57,539.73 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,042.07 | $0.00 |
| 08/01/2022 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $60,924.42 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,042.07 | $0.00 |
| 08/08/2022 | | | $15.00 | Inspection Fee | 03/01/2021 | $60,924.42 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,057.07 | $0.00 |
| 08/17/2022 | | | $91.68 | Certified Mail/Copies Cost | 03/01/2021 | $60,924.42 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,148.75 | $0.00 |
| 08/17/2022 | | | $35.00 | Foreclosure Attorney Fee | 03/01/2021 | $60,924.42 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,183.75 | $0.00 |
| 09/01/2022 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $64,309.11 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,183.75 | $0.00 |
| 09/09/2022 | | | $15.00 | Inspection Fee | 03/01/2021 | $64,309.11 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,198.75 | $0.00 |
| 09/12/2022 | | | $25.00 | Payoff Statement Fee | 03/01/2021 | $64,309.11 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,223.75 | $0.00 |
| 09/12/2022 | | | $25.00 | Payoff Statement Fee | 03/01/2021 | $64,309.11 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,248.75 | $0.00 |
| 10/01/2022 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $67,693.80 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,248.75 | $0.00 |
| 10/10/2022 | | | $15.00 | Inspection Fee | 03/01/2021 | $67,693.80 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,263.75 | $0.00 |
| 11/01/2022 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $71,078.49 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,263.75 | $0.00 |
| 11/08/2022 | | | $25.00 | Payoff Statement Fee | 03/01/2021 | $71,078.49 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,288.75 | $0.00 |
| 11/08/2022 | | | $25.00 | Payoff Statement Fee | 03/01/2021 | $71,078.49 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,313.75 | $0.00 |
| 11/07/2022 | | | $20.00 | Inspection Fee | 03/01/2021 | $71,078.49 | | | | | | $849,630.18 | | $0.00 | ($9,750.57) | $3,333.75 | $0.00 |
| 11/22/2022 | | | $4,480.53 | Escrow Disbursement: County Tax | 03/01/2021 | $74,463.18 | | | | | | $849,630.18 | | $0.00 | ($14,231.10) | $3,333.75 | $0.00 |
| 12/01/2022 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $74,463.18 | | | | | | $849,630.18 | | $0.00 | ($14,231.10) | $3,333.75 | $0.00 |
| 12/2022 | | | $20.00 | Inspection Fee | 03/01/2021 | $74,463.18 | | | | | | $849,630.18 | | $0.00 | ($14,231.10) | $3,353.75 | $0.00 |
| 01/01/2023 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $77,847.87 | | | | | | $849,630.18 | | $0.00 | ($14,231.10) | $3,353.75 | $0.00 |

4151-N-9170

Case: 23-30746   Doc# 24   Filed: 12/28/23   Entered: 12/28/23 15:16:09   Page 10 of 59

# Mortgage Proof of Claim Attachment: Additional Page

Case number: 23-30746
Debtor 1: Carl Harold Ernst Jr.

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | Account Activity | | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | How Funds Were Applied / Amount Incurred | | | | | Balance After Amount Received or incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | C. Funds received | D. Amount incurred | | | | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 01/18/2023 | | | $85.00 | Foreclosure Attorney Fee | 03/01/2021 | $77,847.87 | | | | | | $849,630.18 | $0.00 | ($14,231.10) | $3,438.75 | $0.00 |
| 02/01/2023 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $81,232.56 | | | | | | $849,630.18 | $0.00 | ($14,231.10) | $3,438.75 | $0.00 |
| 03/01/2023 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $84,617.25 | | | | | | $849,630.18 | $0.00 | ($14,231.10) | $3,438.75 | $0.00 |
| 03/03/2023 | | | $4,480.53 | Escrow Disbursement County Tax | 03/01/2021 | $84,617.25 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,438.75 | $0.00 |
| 04/01/2023 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $88,001.94 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,438.75 | $0.00 |
| 05/01/2023 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $91,386.63 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,438.75 | $0.00 |
| 05/05/2023 | | | $20.00 | Inspection Fee | 03/01/2021 | $91,386.63 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,458.75 | $0.00 |
| 05/05/2023 | | | $25.00 | Payoff Statement Fee | 03/01/2021 | $91,386.63 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,483.75 | $0.00 |
| 06/01/2023 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $94,771.32 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,483.75 | $0.00 |
| 06/07/2023 | | | $20.00 | Inspection Fee | 03/01/2021 | $94,771.32 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,503.75 | $0.00 |
| 07/01/2023 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $98,156.01 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,503.75 | $0.00 |
| 07/07/2023 | | | $20.00 | Inspection Fee | 03/01/2021 | $98,156.01 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,523.75 | $0.00 |
| 08/01/2023 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $101,540.70 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,523.75 | $0.00 |
| 08/01/2023 | | | $30.00 | Inspection Fee | 03/01/2021 | $101,540.70 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,563.75 | $0.00 |
| 09/01/2023 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $104,925.39 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,563.75 | $0.00 |
| 09/01/2023 | | | $30.00 | Inspection Fee | 03/01/2021 | $104,925.39 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,563.75 | $0.00 |
| 10/01/2023 | $3,384.69 | | | Regular Payment Due | 03/01/2021 | $108,310.08 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,583.75 | $0.00 |
| 10/01/2023 | | | $30.00 | Inspection Fee | 03/01/2021 | $108,310.08 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,583.75 | $0.00 |
| 10/01/2023 | | | $190.00 | Foreclosure Attorney Fee | 03/01/2021 | $108,310.08 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,773.75 | $0.00 |
| 10/01/2023 | | | $30.00 | Inspection Fee | 03/01/2021 | $108,310.08 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,803.75 | $0.00 |
| 10/01/2023 | | | | Petition Date | 03/01/2021 | $108,310.08 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,803.75 | $0.00 |
| 11/01/2023 | | | ($169.23) | Late Fee Adjustment | 03/01/2021 | $108,310.08 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,634.52 | $0.00 |
| 11/01/2023 | | | $9.59 | Certified Mail/Copies Cost | 03/01/2021 | $108,310.08 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,644.11 | $0.00 |
| 11/01/2023 | | | $143.85 | Certified Mail/Copies Cost | 03/01/2021 | $108,310.08 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $3,787.96 | $0.00 |
| 11/01/2023 | | | $450.00 | Advertise/Publication Cost | 03/01/2021 | $108,310.08 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $4,237.96 | $0.00 |
| 11/01/2023 | | | $120.00 | Posting Cost | 03/01/2021 | $108,310.08 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $4,357.96 | $0.00 |
| 11/01/2023 | | | $95.00 | Recording Cost | 03/01/2021 | $108,310.08 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $4,452.96 | $0.00 |
| 11/01/2023 | | | $35.00 | Foreclosure Attorney Fee | 03/01/2021 | $108,310.08 | | | | | | $849,630.18 | $0.00 | ($18,711.63) | $4,487.96 | $0.00 |

Case: 23-30746    Doc# 24    Filed 12/28/23    Entered 12/28/23 15:16:09    Page 11 of 59

4151-N-9170

Fill in this information to identify the case:

Debtor 1    Carl Harold Ernst Jr.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Northern   District of   California
                                                                 (State)

Case number           23-30746

# Mortgage Proof of Claim Attachment: Addendum

## Additional Claim Itemization:

| Loan History Date | Actual Date Incurred | Description | Amount |
|---|---|---|---|
| 11/1/2023 | 10/2/2023 | Certified Mail/Copies Cost | $9.59 |
| 11/1/2023 | 10/2/2023 | Certified Mail/Copies Cost | $143.85 |
| 11/1/2023 | 10/27/2023 | Advertise/Publication Cost | $450.00 |
| 11/1/2023 | 10/11/2023 | Posting Cost | $120.00 |
| 11/1/2023 | 9/29/2023 | Recording Cost | $95.00 |
| 11/7/2023 | 10/5/2023 | Foreclosure Attorney Fee | $35.00 |

## POC Special Language:

Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor, has been duly indorsed, or creditor, directly or through an agent, has possession of the promissory note and may enforce the promissory note as a transferee in possession. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust. If the original promissory note is lost or destroyed, then Creditor will seek to prove the promissory note using a lost note affidavit.

**CERTIFICATE OF SERVICE OF PROOF OF CLAIM**

I hereby certify that a true and correct copy of the foregoing document has been served upon the following parties in interest on or before November 22, 2023 via electronic notice unless otherwise stated:

**Debtor    Pro Se        *Via U.S. Mail***
Carl Harold Ernst Jr.
542 Verducci Dr.
Daly City, CA 94015

**Chapter 13 Trustee**
David Burchard
P.O. Box 8059
Foster City, CA 94404

Respectfully Submitted,

/s/ Natalie E. Lea
Natalie E. Lea

# ADJUSTABLE RATE NOTE

(1-Year Treasury Index-Rate Caps)
(Assumable after Initial Period)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

DECEMBER 6, 2005                    SAN FRANCISCO                    CALIFORNIA
_____Date_____                      _____City_____                    _____State_____

865 VERMONT STREET, SAN FRANCISCO, CA  94107
_____
(Property Address)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   930,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is _____
WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of ___6.375%.

The interest rate I will pay will change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month on the first day of each month beginning on FEBRUARY 1, 2006.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.
Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on JANUARY 1, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at WELLS FARGO BANK, N.A.
P.O. BOX 10304, DES MOINES, IA  50306-0304
_____
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $   4,940.63 . This amount may change in accordance with subsection (C) below.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate I must pay. The First P&I Payment Due Date is FEBRUARY 1, 2016    .

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

Beginning with the First P&I Payment Due Date, my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 and 5 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of JANUARY, 2016           ,
and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".

ADJUSTABLE RATE NOTE-1-Year Treasury Index

Initials _____    REV. 06/22/05

## (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

## (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding two and three-quarters percentage point(s) (  2.750%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be the new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

## (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than __11.375_% or less than __2.750_%. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than two percentage point(s) (  2.000%) from the rate of interest I have been paying for the preceding _12_ months. My interest rate will never be greater than __11.375_%.

## (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

## (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then:  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Initials: _OdS_

Case 23-30746    Doc# 241    Filed 12/28/23    Entered 12/28/23 15:16:09    Page 15 of
59

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Initials: _OWZ_

REV. 01/14/05

## (A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

### Transfer of the Property or a Beneficial Interest in Borrower.

As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## (B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

### Transfer of the Property or a Beneficial Interest in Borrower.

As used in this section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Carl Ernst_ (Seal)

CARL ERNST -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF

U.S. Bank National Association as trustee for
holders of _____ _____ Funding Corporation
Mortgage Pass-Through Certificates, Series 2007-C
without recourse.

WELLS FARGO BANK, N.A.

BY _Joan M. Mills_
Joan M. Mills, Vice President

REV. 12/07/04

VESTING : Specialized Loan Servicing LLC as attorney in fact for Banc of America Funding Corporation 2007-C, U.S. Bank National Association, as Trustee
CURRENT UPB: $816,341.91
INTEREST ADVANCE: $31,309.54
ADMIN FEES: $0.00
ESCROW ADVANCE: $6,903.71
CORPORATE ADVANCES PAID: $2,327.70
CORPORATE ADVANCES UNPAID: $168.00
CAPITALIZED AMOUNT: $40,708.95
NEW PRINCIPAL BALANCE: $857,050.86
SPOC: Mariela
TELLER ID ███

---

**[Space Above This Line For Recording Data]**

## MODIFICATION AGREEMENT

Borrower ("I"): CARL ERNST whose address is 865 VERMONT STREET, SAN FRANCISCO, CA 94107 ("Borrower").

If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"): Specialized Loan Servicing LLC a whose principal place of business and mailing address is 8742 Lucent Blvd, Suite 300, Highlands Ranch CO 80129 ("Lender").

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") recorded in Book or Liber See Original Instrument, of the Records of San Francisco County, CA and Note ("Note"): 12/06/2005

Loan Numbe ███

Property Address ("Property"): 865 VERMONT STREET, SAN FRANCISCO, CA 94107

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations.** I certify, represent to Lender, covenant and agree:

   A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan
        Documents or my default is imminent, and (ii) I do not have sufficient income or access to
        sufficient liquid assets to make the monthly mortgage payments now or in the near future;

B. Property Type: Single Family
C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program"));
E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
G. If my workout required a trial period plan, I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and
B. I understand that the Loan Documents will not be modified unless and until the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 05/01/2020 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 06/01/2020.

A. The new Maturity Date will be: 04/01/2047.
B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges in addition to any fees or costs that have been or will be incurred in connection with enforcement of the security agreement including those costs and fees associated with the closing and dismissal of any foreclosure action, as applicable and deferred principal and other deferred amounts from a prior modification, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new Principal balance of my Note will be $857,050.86 (the 'New Principal Balance'). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 3.625% will begin to accrue on the New Principal Balance as of 05/01/2020 and the first new monthly payment on the New Principal Balance will be due on 06/01/2020. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly · Payments |
|-------|---------------|---------------------------|----------------------------|--------------------------------|------------------------|-------------------|------------------------------|
| 1-40 | 3.625 % | 05/01/2020 | $3,384.69 | $972.60 | $4,357.29 | 06/01/2020 | 480 |

Borrower promises to make monthly payments of principal and interest per the above payment schedule beginning on 06/01/2020 and continuing thereafter on the same day of each succeeding month.

I will make these payments every month per the above payment schedule, in addition to 1 final balloon payment in the amount of $424,753.64. The Balloon payment amount stated is if all monthly payments have been made as scheduled. At the end of the term, any balance remaining will have to be paid.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. Your initial monthly escrow payment will be $972.60. Your initial total monthly payment will be $4,357.29.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest- only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.    If on the  04/01/2047, ('Maturity' or 'Modified Maturity Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Modified Maturity Date.

4.    **Additional Agreements.** I agree to the following:

A.    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co- borrower is deceased; (ii) the borrower and co- borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.    That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.    To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.    Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.

Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA. If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. This section intentionally left blank.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement (s), title insurance product (s) and/ or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan (if required for this modification) and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan (s); (iv) companies that perform support services for the Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.    That if any document related to the Loan Documents and/ or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.    That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

Specialized Loan Servicing LLC
As Servicer

By: _____(Seal)
Name: _____Steven Ross_____
Its: _____Second Assistant VP_____
Date: _____JUN 0 1 2020_____

_____
**CARL ERNST**                    Date: May 23, 20

If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below.

_____, *Trustee if the*          _____*Trust instrument dated*
_____, *for the benefit of*       _____*(Borrower)*

Entered By:
**MMUSSE**
Loan Status:
Active

Pocket Folder Location: NO_FDPF

Destination:
**VAULT**
First Doc In:
☑ 

# Borrower Name: **ERNST, CARL**

## Doc Type: **Mortgage/DOT**

███████

████████████

## Loan Number:

███████████████

████████████████████ 

---

Pipeline: WHNC

Investor:

Investor Loan #:

Pool Date #:

███████████

Custodian:

State: CA

Pool #: 0

FD ID: ████████████

████████████████

Recording Requested By:

**WELLS FARGO BANK, N.A.**
**2107 N FIRST ST 450**
**SAN JOSE, CA 95131-**

San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC- 2005-I088064-00
Acct 1-CHICAGO Title Company
Tuesday, DEC 13, 2005 08:00:00
Ttl Pd $84.00         Nbr
REEL J035  IMAGE 0008
ota/TD/1-26

Return To:
**WELLS FARGO BANK, N.A.**
**FINAL DOCUMENTS**
**1000 BLUE GENTIAN ROAD**
**EAGAN, MN 55121-1663**
Prepared By:
**SMS TEAM**
**WELLS FARGO BANK, N.A.**
**2107 N FIRST ST 450**
**SAN JOSE, CA 95131-**

APN Lot 109; Block 4093

LTC Esc

1865 VERMONT STREET

———————[Space Above This Line For Recording Data]———————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **DECEMBER 6, 2005** together with all Riders to this document.
**(B) "Borrower"** is
**CARL H. ERNST, AN UNMARRIED MAN**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **WELLS FARGO BANK, N.A.**

Lender is a **National Association**
organized and existing under the laws of **THE UNITED STATES OF AMERICA**

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Page 1 of 18            Initials:

FORM 3005    1/01

SCA01    Rev 11/09/00

Lender's address is
**P. O. BOX 5137, DES MOINES, IA 50306-5137**
Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is **FIDELITY NATIONAL TITLE INSURANCE COMPANY**

**(E) "Note** " means the promissory note signed by Borrower and dated **DECEMBER 6, 2005** .
The Note states that Borrower owes Lender **NINE HUNDRED THIRTY THOUSAND AND NO/100** Dollars
(U.S. $ .....**930,000.00** ..........) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JANUARY 1, 2036**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| **X** Adjustable Rate Rider | **X** Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that

SCA02    Rev 12/18/00                    Page 2 of 18              Initials            **FORM 3005**    **1/01**

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA. **(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| **County** | of | **SAN FRANCISCO** | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**APN: LOT 109, BLOCK 4093**
**FOR LEGAL DESCRIPTION SEE ATTACHED HERETO AND MADE A PART HEREOF**

Parcel ID Number: 4093/109                                             which currently has the address of
**865 VERMONT STREET**                                                                                    [Street]
**SAN FRANCISCO**                                    [City] , California        **94107**        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

SCA03    Rev 11/09/00                     Page 3 of 18            Initial                     **FORM 3005    1/01**

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

SCA05    Rev 11/09/00              Page 5 of 18          Initials            **FORM 3005   1/01**

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination

or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In

either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument**. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or

(c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

SCA09   Rev 11/13/00                    Page 9 of 18          Initials            FORM 3005   1/01

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exhange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by

this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly

requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

Case 23-30746   Doc# 241   Filed 12/28/23   Entered 12/28/23 16:09   Page 41 of 59

The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or**

before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _Carl Ernst_____ (Seal)
                                           **CARL ERNST** AKA CARL H. ERNST **Borrower**
                                           AKA CARL H. ERNST, JR.


_____

**State of California**,                                          **ss:**

**County of** *San Francisco*

On     *12/7/05*     before me,   *Elizabeth V. Glazener*

                                                 personally appeared

**CARL H. ERNST, AN UNMARRIED MAN**

 

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~
executed the same in his/~~her/their~~ authorized capacity(ies), and that by his/~~her/their~~
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal.



ELIZABETH V. GLAZENER
COMM██████
NOTARY PUBLIC - CALIFORNIA
SAN FRANCISCO COUNTY
My Comm. Expires Oct. 6, 2006

*Elizabeth V. Glazener* _____ (Seal)

SCA18    Rev 10/17/00                 Page 18 of 18             Initials _____        **FORM 3005**    **1/01**

## LEGAL DESCRIPTION

### EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF San Francisco, COUNTY OF San Francisco, STATE OF California AND IS DESCRIBED AS FOLLOWS:

CITY OF SAN FRANCISCO

PARCEL A:

UNIT 865, LOT 109, AS SHOWN ON THAT CERTAIN MAP ENTITLED "MAP OF 861-863-865-867 VERMONT STREET, A CONDOMINIUM BEING A RESUBDIVISION OF LOTS 57 AND 58, PORTION OF ASSESSOR'S BLOCK NO. 4093, SAN FRANCISCO, CALIFORNIA", WHICHMAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA, ON DECEMBER 13, 1989 IN BOOK 30 OF CONDOMINIUM MAPS, AT PAGES 105 TO 108, INCLUSIVE.

EXCEPTING THEREFROM, THE FOLLOWING:

(A) NON-EXCLUSIVEEASEMENTS THROUGH SAID UNITS, APPURTENANT TO THE COMMON AREA AND ALL OTHER UNITS, FOR INGRESS, EGRESS, SUPPORT AND REPAIR OF THE COMMON AREA AND ALL UNITS;

(B) NON-EXCLUSIVE EASEMENTS, APPURTENANT TO THE COMMON AREA, FOR ENCROACHMENT UPON THE AIR SPACE OF THEUNIT BY THOSE PORTIONS OF THE COMMON AREA LOCATED WITHIN THE UNIT.

PARCEL B:

TOGETHER WITH THE FOLLOWING APPURTENANT EASEMENTS:

(A) A NON-EXCLUSIVE EASEMENT FOR INGRESS, EGRESS, SUPPORT AND REPAIR THROUGH THE COMMON AREA, AS SHOWN ON THE MAP;

(B) ANEXCLUSIVE EASEMENT TO USE DECK AREAS NO. D-865, D-865A, D-865B AND D-865-C, AS SHOWN ON THE MAP;

(C) AN EXCLUSIVE EASEMENT TO USE RESTRICTED AREA NO. R-865, AS SHOWN ON THE MAP. PARCEL C: AN UNDIVIDED 35.93% INTEREST, IN AND TO THE COMMON AREA, AS SHOWN ON THE MAP.

EXCEPTING THEREFROM, EXCLUSIVE EASEMENTS FOR USE OF PARKING, DECK, GARDEN AND RESTRICTED AREAS OTHER THAN THOSE SHOWN IN PARCEL "B" ABOVE, IN FAVOR OF THE UNITS, AS SHOWN ON THE MAP.

PARCEL D:

TOGETHER WITH THE FOLLOWING EASEMENTS APPURTENNAT TOTHE COMMON AREA:

(A) NON-EXCLUSIVE EASEMENTS FOR ENCROACHMENTS UPON THE AIR SPACE OF ALL OF THE UNITS BY AND FOR THE PORTIONS OF THE COMMON AREA LYING WITHIN THE UNITS.

APN: Lot 109, Block 4093

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this ......6th day of DECEMBER, 2005................ , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to ...................................................................................................................
......WELLS FARGO BANK, N.A.
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: .....865 VERMONT STREET.................................................................................................
..........SAN FRANCISCO, CA  94107
*(Property Address)*
The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:  861-867 VERMONT STREET
*(Name of Condominium Project)*

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

MULTISTATE CONDOMINIUM RIDER
Single Family - FNMA/FHLMC Uniform Instrument

Form 3140 1/01   (Page 1 of 3)
███  ev. 11/13/00

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

MULTISTATE CONDOMINIUM RIDER
Single Family - FNMA/FHLMC Uniform Instrument

Form 3140 1/01  (Page 2 of 3)
Rev. 11/13/00

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____(Seal)
**CARL ERNST** AKA CARL H. ERNST -Borrower
AKA CARL H. ERNST, JR.

MULTISTATE CONDOMINIUM RIDER
Single Family - FNMA/FHLMC Uniform Instrument

Form 3140 1/01 (Page 3 of 3)
ev. 11/13/00

# ADJUSTABLE RATE RIDER

**(1-Year Treasury Index-Rate Caps)**
**(Assumable after Initial Period)**

This Adjustable Rate Rider is made this **6th day of DECEMBER, 2005**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to **WELLS FARGO BANK, N.A.** (the "Lender") of the same date and covering the property described in the Security Instrument and located at: **865 VERMONT STREET, SAN FRANCISCO, CA 94107**

(Property Address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an Initial Interest Rate of **6.375** %. The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The Interest Rate I will pay may change on the first day of **JANUARY, 2016**, and may change on that day every **12** th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an

Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**ADJUSTABLE RATE RIDER-1-Year Treasury Index (Assumable after Initial Period)**

Rev. 06/03/05

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **two and three-quarters percentage point(s) ( 2.750%)**..........................to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be the new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than **11.375** % or less than **2.750** % . Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than **two percentage point(s) ( 2.000%)** from the rate interest I have been paying for the preceding 12 months. My interest rate will never be greater than **11.375** %

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Rev. 03/30/05

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

1. UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

### Transfer of the Property or a Beneficial Interest in Borrower.

As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1. ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

### Transfer of the Property or a Beneficial Interest in Borrower.

As used in this section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond fordeed, contract for deed, installment sales contract or escrow agreement, the intent of which is thetransfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
CARL ERNST AKA CARL H. ERNST     -Borrower
AKA CARL H. ERNST, JR.

Rev. 03/30/05

***Send All Notices to Assignee***

RECORDING REQUESTED BY:
**WELLS FARGO BANK, N.A.**
**1000 BLUE GENTIAN RD**
**SUITE 200**
**EAGAN, MN 55121**

AND WHEN RECORDED MAIL TO
**WELLS FARGO BANK, N.A.**
**MAC█████████**
**PO BOX 1629**
**EAGAN, MN 55121-4400**
**ATTN: ASSIGNMENT TEAM**

San Francisco Assessor-Recorder
Carmen Chu, Assessor-Recorder
DOC 2016-K334859-00
Acct 1006-Wells Fargo Bank, NA
Tuesday, SEP 27, 2016 08:30:09
Ttl Pd $18.00 Nbr █████████
oma/RE/1-1

Property Address:**865 VERMONT STREET SAN FRANCISCO CA 94107**
APN: **LOT 109, BLOCK 4093**

### ASSIGNMENT OF DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **WELLS FARGO BANK, N.A.** , **1 HOME CAMPUS , DES MOINES, IA 50328** . For VALUE RECEIVED, the undersigned hereby does convey, assign, transfer and set over to: **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR BANC OF AMERICA FUNDING CORPORATION 2007-C** , **60 LIVINGSTON AVENUE , ST. PAUL, MN 55107** , assignee, the described deed of trust, with all interest, all liens, and any rights due or to become due thereon. Said Deed of Trust for **$930000.00** is recorded in the State of **CA** , County of **San Francisco** Official Records, dated **12/06/2005** and recorded **12/13/2005** , as Instrument No. **2005-I088064-00** .

Executed by **CARL ERNST AKA CARL H. ERNST AKA CARL H. ERNST, JR. AN UNMARRIED MAN** , as Trustors and **WELLS FARGO BANK, N.A.** as the original beneficiary. Legal Description: **As more fully described in said Deed of Trust.**

Dated: **09/27/2016**
WELLS FARGO BANK, N.A.

By: SCOTT GERALD HEURKINS Vice President Loan Documentation

STATE OF MN     } S.S.
COUNTY OF Dakota

On **09/27/2016** before me, **BHAVDIP CHHOTALAL CHAUHAN** , a Notary Public, personally appeared **SCOTT GERALD HEURKINS** , **Vice President Loan Documentation** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

BHAVDIP CHHOTALAL CHAUHAN, Notary Public
Expires: 01/31/2021



BHAVDIP CHHOTALAL CHAUHAN
NOTARY PUBLIC-MINNESOTA
MY COMMISSION EXPIRES 01/31/2021

Specialized Loan
**Servicing**

Part of the Computershare Group

6200 S. Quebec St., Ste. 300
Greenwood Village, CO 80111

CARL ERNST
865 VERMONT STREET
SAN FRANCISCO CA 94107

Dear Customer,

As trusted managers of your escrow account, we have safeguards in place to ensure there's enough money in your account to cover your tax and insurance payments.

Because you have an escrow account, it means that part of your monthly mortgage payment goes into an account to pay for your property taxes and/or insurance premiums. During the year, payments are made from your escrow account when tax and/or insurance bills become due. The Escrow Account Disclosure Statement shows how much money has been credited to and paid from the escrow account over the last 12 months. Additionally, both the projected and required balances are compared to ensure that we are collecting the appropriate amount.

**Based on our recent analysis, your escrow account does not have a shortage or surplus.**

| Projected Minimum Balance | $1,493.50 |
| --- | --- |
| Required Minimum Balance | $1,493.50 |

**PART 1**

## Your Mortgage Payment

### Payment Information

| Payment Information | Payment on Prior Analysis | New Monthly Payment Effective 11/01/2023 |
| --- | --- | --- |
| PRIN & INTEREST | 3384.69 | 3384.69 |
| ESCROW PAYMENT | 746.75 | 746.75 |
| **Total Payment:** | **$4,131.44** | **$4,131.44** |

## Helpful Tips About Your Escrow Account

- Did you know that you can find lots of helpful information about your escrow account on our website? Go to www.sls.net to learn more.

- If you have questions about your property taxes, please feel free to give us a call at 1-866-801-1373.

- Did you know that you can easily upload a copy of your updated insurance policy, or see the details of the property insurance we currently have on file? Visit www.mycoverageinfo.com to learn more, or give us a call at 1-800-441-4145.

- If your property has been damaged, or if you have questions about the process for obtaining insurance claim check endorsement, please visit www.insuranceclaimcheck.com, or give us a call at 1-888-528-0454.

(Continued on Next Page)

## Your Escrow Account History

The chart below reflects what actually happened in your escrow account since your last analysis
compared to what we estimated would happen.

| Date | Payment to Escrow | What Your Estimated Payment to Escrow Was | What We Paid Out | What We Estimated to Pay Out | Description | Actual Balance | Last Year's Estimated Balance |
|---|---|---|---|---|---|---|---|
| | | | | | BEGINNING BAL | -14231.10 | 2987.03 |
| Jan 23 | 0.00 * | 746.75 | 0.00 | 0.00 | | -14231.10 | 3733.78 |
| Feb 23 | 0.00 * | 746.75 | 0.00 | 0.00 | | -14231.10 | 4480.53 |
| Mar 23 | 0.00 * | 746.75 | 4480.53 * | 0.00 | COUNTY TAX | -18711.63 LP | 5227.28 |
| Apr 23 | 0.00 * | 746.75 | 0.00 * | 4480.53 | COUNTY TAX | -18711.63 | 1493.50 |
| May 23 | 0.00 * | 746.75 | 0.00 | 0.00 | | -18711.63 | 2240.25 |
| Jun 23 | 0.00 * | 746.75 | 0.00 | 0.00 | | -18711.63 | 2987.00 |
| Jul 23 | 0.00 * | 746.75 | 0.00 | 0.00 | | -18711.63 | 3733.75 |
| Aug 23 | 0.00 * | 746.75 | 0.00 | 0.00 | | -18711.63 | 4480.50 |
| Sep 23 | 0.00 * | 746.75 | 0.00 | 0.00 | | -18711.63 | 5227.25 |
| Oct 23 | 0.00 * | 746.75 | 0.00 | 0.00 | | -18711.63 | 5974.00 |
| **TOTALS** | **0.00** | **7467.50** | **4480.53** | **4480.53** | | | |

**LEGEND:**

IOE = Interest on the Escrow Balance      E = Estimated Payments
LP = Lowest Actual Monthly Balance      * = Projected and Actual Payments Differ

Last year we anticipated that payments from your escrow account would be made during this period equaling $4,480.53. Under federal law, your actual
lowest monthly balance should not have exceeded $1,493.50 or 1/6 of the estimated payments from your escrow account unless your mortgage documents
or state law specifies a lower amount. Your mortgage contract and state law are silent on this issue. Your actual lowest escrow balance was $-18,711.63.

## Estimated Escrow Payments Over the Next 12 Months

### Summary of your projected escrow account for the coming year

| Date | Payment to Escrow | What We Estimate to be Paid Out | Description | Your Estimated Balance | Balance Needed In Your Account |
|---|---|---|---|---|---|
| | | | BEGINNING BAL | 5974.06 | 5974.06 |
| Nov 23 | 746.75 | 0.00 | | 6720.81 | 6720.81 |
| Dec 23 | 746.75 | 4480.53 | COUNTY TAX | 2987.03 | 2987.03 |
| Jan 24 | 746.75 | 0.00 | | 3733.78 | 3733.78 |
| Feb 24 | 746.75 | 0.00 | | 4480.53 | 4480.53 |
| Mar 24 | 746.75 | 0.00 | | 5227.28 | 5227.28 |
| Apr 24 | 746.75 | 4480.53 | COUNTY TAX | 1493.50 | 1493.50 |
| May 24 | 746.75 | 0.00 | | 2240.25 | 2240.25 |
| Jun 24 | 746.75 | 0.00 | | 2987.00 | 2987.00 |
| Jul 24 | 746.75 | 0.00 | | 3733.75 | 3733.75 |
| Aug 24 | 746.75 | 0.00 | | 4480.50 | 4480.50 |
| Sep 24 | 746.75 | 0.00 | | 5227.25 | 5227.25 |
| Oct 24 | 746.75 | 0.00 | | 5974.00 | 5974.00 |
| **TOTALS** | **8961.00** | **8961.06** | **ENDING BAL** | **5974.00** | **5974.00** |

Cushion selected by servicer: $1,493.50

Here's how to calculate your new monthly escrow payment:

| COUNTY TAX | $8,961.06 |
|---|---|
| **Total:** | **$8,961.06** |
| | + 12 Months |

### New Monthly Escrow Payment:      $746.75

Your ending escrow balance from the last month of account history is $5,974.06, your starting balance according to this analysis should be $5,974.06. This
means that as of the effective date of your payment, you will not have a surplus or shortage.





| | |
|---|---|
| **PART** **4** | **How You Can Reach Us With Questions** |

For statement questions, please contact
**Customer Care: 1-800-315-4757**
Monday - Friday, 6:00 a.m. - 6:00 p.m. MT

SLS accepts calls from relay services. We provide translation services for individuals who indicate a language preference other than English. Se habla español.

For help in understanding your Escrow Statement, please see our video 'Understanding Your Escrow Account Disclosure Statement' at the following link: www.sls.net/customers/videos

SPECIALIZED LOAN SERVICING LLC IS REQUIRED BY FEDERAL LAW TO ADVISE YOU THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO INFORM YOU OF THE STATUS OF THE MORTGAGE SECURED BY THE SUBJECT PROPERTY. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. IF YOU RECEIVED A DISCHARGE OF THE DEBT IN BANKRUPTCY, WE ARE AWARE THAT YOU HAVE NO PERSONAL OBLIGATION TO REPAY THE DEBT. WE RETAIN THE RIGHT TO ENFORCE THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY, IF ALLOWED BY LAW AND/OR CONTRACT. IF YOU HAVE QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.

Austin P. Nagel, SBN 118247
Kirsten Martinez, SBN 310674
Bonial & Associates, P.C.
3160 Crow Canyon Place, Suite 215
San Ramon, California 94583
Telephone: (213) 863-6010
Fax: (213) 863-6065
Austin.Nagel@BonialPC.com
Kirsten.Martinez@BonialPC.com

Attorney for Secured Creditor Banc of America Funding
Corporation 2007-C, U.S. Bank National Association, as
Trustee as serviced by Specialized Loan Servicing LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>Carl Harold Ernst Jr.<br><br><br><br><br><br><br><br><br><br><br>Debtor. | Case No. 23-30746<br><br>Chapter 13<br><br>**CERTIFICATE OF SERVICE**<br><br>341(a) Meeting:<br>Date:  January 4, 2024<br>Time:  2:00 p.m.<br>Place:  Tele/Video Conference<br><br>Confirmation Hearing:<br>Date:  Trustee's Pending List<br>Time:  Trustee's Pending List<br>Place:  Tele/Videoconference |

I, Corey Banks, declare:

1.  I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 14841 Dallas Parkway, Suite 350, Dallas, Texas 75254.

2.  On <u>December 28, 2023</u>, true and correct copies of the foregoing documents described:

- Objection to Confirmation of Plan

Case: 23-30746   Doc# 24   Filed: 12/28/23   Entered: 12/28/23 15:16:09   Page 58 of 59

1  • Exhibits in support
2
3  were served by placing a true and correct copy thereof in a sealed envelope in the United States Mail
4  first class postage prepaid on the following interested parties:
5
   *Debtor Pro Se*
6  Carl Harold Ernst Jr.
   542 Verducci Dr.
7  Daly City, CA 94015
8
9  *Trustee*                              *U.S. Trustee*
   David Burchard                         by the Court
10 P.O. Box 8059                          via Notification of Electronic Filing
   Foster City, California 94404
11
12
13 I declare under penalty of perjury under the laws of the United States of America that the foregoing is
14 true and correct.
15 Dated: __December 28, 2023__          By:    __/s/ Corey Banks__
16                                               Corey Banks
17
18
19
20
21
22
23
24
25
26
27
28